**Gemma FEIN, Hal Fein, Susan Fein and Lisa Fein, Plaintiffs,**

**v.**

**SHEARSON HAYDEN STONE, INC., Ladenburg Thalmann & Co., Inc., Michael Moss, Gordon Joblan, Marvin Leiter and Peter Stabell, Defendants.**

**No. 77 Civ. 5087 (KTD).**

United States District Court, S. D. New York.

Nov. 6, 1978.

---

Berger & Katz, New York City, for plaintiffs; George Berger, Harold W. Paul, New York City, of counsel.

Willkie, Farr & Gallagher, New York City, for defendants Shearson Hayden Stone, Inc., Gordon Joblan, Marvin Leiter and Peter Stabell; William T. Sullivan, Michael C. Lambert, Gerald Kerner, New York City, of counsel.

Coudert Brothers, New York City, for defendant Michael Moss; Mark D. Lebow, New York City, of counsel.

Rosenman Colin, Freund, Lewis & Cohen, New York City, for defendant Ladenburg Thalmann & Co., Inc.; Gerald Walpin, Eric M. Rosenberg, Seth A. Davis, New York City, of counsel.

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs, Gemma, Hal, Susan and Lisa Fein, bring this action against the brokerage houses of Shearson Hayden Stone, Inc., [hereinafter referred to as "Shearson"], and Ladenburg Thalmann & Co., Inc., [hereinafter referred to as "Ladenburg"], and the individuals Michael Moss, Gordon Joblan, Marvin Leiter and Peter Stabell, alleging violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5 promulgated thereunder, Rule 405 of the New York Stock Exchange, [hereinafter referred to as "NYSE"], Article III, section 27 of the Rules of Fair Practice of the National Association of Securities Dealers, [hereinafter referred to as "NASD"], and, under the principles of pendent jurisdiction, common law fraud and negligence.

## PRIOR JUDICIAL PROCEEDINGS

The original complaint in this action was filed in October of 1977 and the case initially assigned to Judge Brieant. The defendants thereafter separately moved before Judge Brieant to dismiss the complaint, pursuant to Rules 12(b) and 9(b) of the Federal Rules of Civil Procedure, for failure to state a claim by virtue of plaintiffs' failure to plead the allegations of fraud with the requisite degree of particularity.

It is apparent that upon oral argument, Judge Brieant was convinced that at the heart of plaintiffs' failure to plead the allegedly fraudulent stock transactions with sufficient particularity were certain brokerage statements sent by defendants Shearson and Ladenburg to plaintiffs over a six-year period, many of which plaintiffs no longer possessed. Since Shearson and Ladenburg had copies of these statements, Judge Brieant made the following order:

Upon oral argument of the motion, counsel have agreed together at the request of the Court, that within two weeks from date hereof plaintiffs' counsel will furnish to defendants' counsel a list of all brokerage statements, copies of which are not available to plaintiffs or their tax adviser because they have been lost or misplaced. Within two weeks thereafter, the defendant stockbroker who issued the statement will supply a copy thereof to plaintiffs' counsel.

Twenty (20) days thereafter plaintiffs will file an amended complaint which shall state with particularity the transactions which are regarded as unauthorized or unlawful. Claims against Shearson Hayden Stone, Inc. shall be pleaded separately from claims against Ladenburg Thalmann & Co., Inc. and separately stated in the amended complaint.

The case was reassigned to me in April, 1978 at approximately the same time plaintiffs served their amended complaint. Since plaintiffs' time to file their amended complaint was keyed upon defendants' furnishing them with all those brokerage statements no longer in plaintiffs' possession, I must assume, the amended complaint having been filed, that defendants fully complied with Judge Brieant's order.[1]

Upon the filing of the amended complaint, the defendants have separately moved, under various theories, attacking the sufficiency of plaintiffs' complaint.

---

1. Indeed, there is no indication in the papers before me that plaintiffs were denied any of the statements deemed essential by Judge Brieant in order to state their claims with sufficient particularity. Thus, the failure to plead with particularity this time around can only be attributed to the absence of a claim rather than the absence of information vital thereto.

The defendants have all renewed their motions to dismiss the complaint pursuant to Rules 12(b) and 9(b), Fed.R.Civ.P., for failure to state a claim by virtue of plaintiffs' continued failure to plead the allegations of fraud with the requisite particularity. Defendants Shearson, Joblan, Leiter, Stabell and Moss have, in addition, all moved to dismiss the complaint pursuant to Rule 12(b) of the Fed.R.Civ.P. for failure to state a claim upon which relief can be granted by virtue of:

(a) plaintiffs' failure to allege *scienter* as a necessary element of fraud under section 10b and Rule 10b–5;

(b) the absence of an implied private cause of action for violation of NYSE Rule 405 and Article III section 27 of the NASD; and

(c) the unavailability of punitive damages with respect to any claim alleged in the complaint.

Defendant Ladenburg has moved, in lieu of my granting its motion to dismiss as set forth above, pursuant to Rules 12 and 20, F.R.Civ.P., to sever the claims asserted against it in the amended complaint from those of the other defendants or, in the alternative, for a more definite statement pursuant to Rules 12(e) and 10(b), Fed.R.Civ.P.

## PARTIES

Plaintiffs are all members of the Fein family who have had, at different times between 1969 through 1975, individual "non-discretionary" brokerage accounts with Shearson and Ladenburg respectively.

Shearson and Ladenburg are engaged in the business of buying and selling securities on the national securities exchanges and over-the-counter as brokers, dealers and principals, and are both members of the New York Stock Exchange.

Michael Moss was a registered representative at all times relevant to this action. He was employed primarily by Shearson during the time frame relevant to this case except for a brief period while he was employed in that capacity by Ladenburg.

Peter Stabell was a registered representative employed by Shearson at all times relevant to this action.

Gordon Joblan and Marvin Leiter were both General Managers of Shearson's Retail Department at all times relevant to this case.

## FACTUAL BACKGROUND

Sometime in 1968, Hal Fein and his wife Gemma, sold their interests in the Roosevelt Music Co., for a substantial sum of money. Thereafter, the Feins decided that they should invest the proceeds in the stock market and to this end Hal contacted his friend Michael Moss who was then a registered representative employed by Shearson. Moss arranged a meeting between Fein and a financial advisor to best determine the investment objectives Fein should pursue. It was determined at this meeting that Fein's needs would best be served by investing in municipal bonds and "blue chip" securities.

In February 1969 four individual "non-discretionary" accounts were opened with Shearson in the names of the four individual plaintiffs in this action, [hereinafter collectively referred to as the "Fein accounts"].[2] The total capital investment in these accounts was approximately $1,000,000. These accounts were collectively serviced by Moss during his employment at Shearson.

In the early part of 1973, Moss left Shearson and took a position as a registered representative at Ladenburg. The Fein accounts followed Moss to Ladenburg and were continually serviced by him. In October, however, Moss' employment with Ladenburg was terminated and he again returned to Shearson in the capacity of a registered representative and, as before, the Fein accounts followed him to Shearson.

---

**2.** Hal and Gemma both had individual accounts while the remaining two accounts, in the name of Lisa and Susan Fein, were custodial accounts with Gemma Fein designated as custodian.

The Fein accounts remained with Shearson and were serviced by Moss until October of 1975.

The essence of plaintiffs' complaint is that Moss, in the course of servicing the Fein accounts between 1969 through 1975, engaged in certain allegedly fraudulent activity all to the damage of plaintiffs. In particular, plaintiffs allege that defendant Moss engaged in a series of "unauthorized" transactions while employed by Shearson and Ladenburg, at least some of which were calculated solely to generate commissions for Moss rather than fulfilling the investment objectives of the Feins.

Plaintiffs also charge that defendant Peter Stabell, also a registered representative with Shearson, engaged in similar fraudulent conduct with respect to the Fein accounts. Plaintiffs further charge that they informed defendants Joblan and Leiter, as General Managers of Shearson's Retail Department, of the conduct of Moss but no preventive measures were taken by them. Finally, they charge that in light of all the circumstances both Shearson and Ladenburg "knew or should have known" of the actions of their agents and, in particular, of the fraudulent conduct of Moss so as to impose liability upon them for these actions.

## PLEADING FRAUD WITH PARTICULARITY

Under the Federal Rules when a plaintiff charges a defendant with fraud he must do so with a certain amount of particularity. Rule 9(b) provides, in part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

It is clear that in the context of section 10(b) of the Securities Exchange Act, Rule 9(b) requires more than conclusory allegations of deception or fraud. *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971). The plaintiff's allegations must "give the defendant fair notice of what the plaintiff's claim is *and the grounds upon which it rests.*" *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir. 1978) (emphasis added). *See also Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972). However simply stated, the application of Rule 9(b) is somewhat more problematic. Nevertheless, it is against this background that I must test the sufficiency of plaintiffs' amended complaint.[3]

## MOSS

As previously noted, the bulk of plaintiffs' complaint is aimed at the activities of Michael Moss with respect to the Fein accounts during the period 1969 through 1975. While cloaked in vague, conclusory and often conflicting language, the charges against defendant Moss are as follows:

(a) Moss entered into a series of "unauthorized trades" during the early part of 1970 and thereafter continued these activities. These trades include, but are not limited to, those set forth in plaintiffs' Exhibit 1.[4] (Complaint ¶ 20).

(b) In January 1973 and again in October 1975, certain municipal bonds in Gemma Fein's account were margined for certain "unauthorized trades" by Moss while employed by Shearson and Ladenburg. (Complaint ¶¶ 21, 25).

(c) Moss "induced" plaintiffs to transfer their accounts from Ladenburg to Shearson when he was re-employed by Shearson late

3. It should be noted from the outset that the complaint, quite apart from its vague and conclusory language, is replete with certain irreconcilable factual allegations. Indeed, the actions taken by plaintiffs during the operative time period certainly do not comport with their allegations of fraud. For example, in January 1973 plaintiffs *discovered* that Moss, while at Ladenburg, allegedly margined certain municipal bonds as collateral in order to engage in certain unauthorized trades. Yet, in the fall of 1973 the plaintiffs, aware of Moss' conduct, transferred all four accounts to Shearson when Moss was reemployed by them.

4. Plaintiffs' Exhibit 1 consists of a "partial" list of stock transactions which took place during the operative time frame. The list only reflects those transactions which occurred in Gemma Fein's brokerage account and supposedly represents only some of the allegedly fraudulent transactions.

in 1973 so that he could continue to service the accounts. While at Shearson, he "continued his fraudulent practices" all to the damage of plaintiffs. These "fraudulent practices" include, but are not limited to, those transactions set forth in plaintiffs' Exhibit 2.[5] (Complaint ¶¶ 22–24).

(d) Moss "churned" the account of Gemma Fein during the period between 1970 through 1975, and engaged in "excessive trading" as to all the accounts in order to generate commissions for himself and further his own personal objectives rather than to further plaintiffs' investment objectives. (Complaint ¶¶ 26–27).

(e) Moss assured plaintiff, Hal Fein, that he was following the general tenor of his investment instructions while in fact engaging in certain "perilous transactions" such as short sales in early 1975, the purchase of moral obligation bonds, rather than general obligation bonds, in 1973, the purchase of restricted letter stock (Sibaney) in 1969 and speculations in options in early 1975. (Complaint ¶ 28).

Plaintiffs' argue that the complaint, as amended, now pleads fraud with sufficient particularity and that they need not set forth each and every transaction between the parties alleged to be fraudulent.[6] Moreover, they argue that in any event, the type of particularity with which defendants would have them plead is evidentiary in nature and has no place at this stage of the pleadings. In this regard, they rely upon *Felton v. Walston & Co., Inc.,* 508 F.2d 577 (2d Cir. 1974). I think plaintiffs' reliance is misplaced.

While the Court in *Felton* did state that one of the main purposes of Rule 9(b) is to apprise a defendant of the claim against him, they went on to state that the Rule is also calculated to apprise him of "the acts relied upon as constituting · the fraud charged." *Id.* at 581. Indeed, this is the major flaw in plaintiffs' amended complaint. While there may be no need in this particular case for each and every allegedly fraudulent transaction to be fully set forth, save the express direction of Judge Brieant to that effect, plaintiffs are obligated under Rule 9(b) to set forth the acts surrounding the transactions at least insofar as necessary to ascertain in what respect these transactions were fraudulent.

▪ I find plaintiffs' allegations that certain transactions, set forth in plaintiffs' Exhibits 1 and 2, were "unauthorized" or "perilous", far too vague, speculative and conclusory to sustain their obligation under Rule 9(b).[7] In this regard I find the case of *Rich v. Touche Ross & Co.,* 68 F.R.D. 243 (S.D.N.Y.1975), particularly germane. In *Rich,* referring to certain allegedly fraudulent financial statements, the Court stated that simply denominating the statements as "false, misleading or inaccurate" was not sufficient under 9(b). Rather, there must not only be an identification of what statements were made, but also in what respect they were false, misleading or inaccurate. *Id.* at 246. The failure to do so was a fatal defect in plaintiff's complaint. Similarly in the case at bar, plaintiffs' failure to plead in any way, shape or fashion, in what respect the transactions were "unauthorized" or fraudulent is a fatal defect. Indeed,

---

**5.** Plaintiffs' Exhibit 2, like Exhibit 1, is only a "partial" list of stock transactions which took place during the relevant period.

Again, the list reflects only those transactions taking place in the Gemma Fein account and only some of the fraudulent transactions.

The obvious flaw in these allegations, as with the balance of the complaint, is that the bulk of transactions alleged to be fraudulent deal only with the brokerage account of Gemma Fein. Any reference, however vague or conclusory, as to the other accounts is all but absent.

**6.** This position, of course, ignores totally the instructions set forth by Judge Brieant in his

opinion wherein he directed that plaintiffs "state with particularity the transactions which are regarded as unauthorized or unlawful."

**7.** It should be noted that the only substantial difference between plaintiffs' original complaint and their amended complaint is the annexation of the two exhibits to the amended complaint. It is also evident that these exhibits refer only to the brokerage account of Gemma Fein and therefore, as to the other named plaintiffs, add nothing to the original complaint previously dismissed by Judge Brieant.

there are any number of ways in which the transactions in issue could have been unauthorized or fraudulent, and absent elaboration, plaintiffs have simply pleaded vague conclusions. While such allegations may very well satisfy the general notice function of pleadings under Rule 8, Fed.R.Civ.P., they are a far cry from the type of notice contemplated under Rule 9(b). *See generally Denny v. Barber, supra,* 576 F.2d at 469–70.

Plaintiffs' allegations that Moss margined certain municipal bonds in the Gemma Fein account in order to engage in a series of "unauthorized trades" suffers from the same defect. In addition to referring only to the account of Gemma Fein, these allegedly fraudulent transactions are set forth in the same vague, speculative and conclusory fashion as are the transactions above. Nowhere in the complaint is it set forth which municipal bonds were margined as collateral. Beyond this, however, absent from the complaint is any indication whether it was the margining, subsequent trades or both acts which constituted the fraud. The defendants are certainly put in a precarious position by such vague allegations. They do not know whether to base their defense on the fact that the margining was authorized or the subsequent sales were authorized or both actions were authorized by plaintiffs. Indeed, this is the very type of situation Rule 9(b) was designed to prevent. *See Gross v. Diversified Mortg. Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977). Accordingly, these allegations also fail to meet the requirements of Rule 9(b).

Turning to plaintiffs' allegations that Moss "churned" the account of Gemma Fein, the same defects are apparent. Nowhere in plaintiffs' complaint do they ever identify which transactions constituted "churning." Rather, they simply allege that during a six-year period the account of Gemma Fein was churned. (Complaint ¶ 26). It is further alleged, without benefit of elaboration, that between 1970 through 1975 all of plaintiffs' accounts show excessive trading. I find these allegations also defective under Rule 9(b). As the pleadings now stand, defendants, in order to rebut the allegations of churning, must go through each transaction between 1970 through 1975 and justify them as valid commercial transactions. This is unduly burdensome and the very type of fishing expeditions Rule 9(b) was designed to prevent. *See Gross v. Diversified Mortg. Investors, supra.*

■ Plaintiffs' allegation that Moss assured them that he was following their investment objectives while in fact engaging in certain "perilous" transactions is similarly insufficient under Rule 9(b). Nowhere is it alleged what these transactions were, much less what rendered these transactions fraudulent or "perilous." [8]

### JOBLAN, LEITER and STABELL

Plaintiffs' amended complaint is totally void of any allegation, vague or otherwise, concerning any allegedly fraudulent activities of Marvin Leiter. Accordingly, plaintiffs have not only failed to allege facts sufficient under Rule 9(b), but also under Rule 8 as to this defendant.

---

**8.** Plaintiffs also allege that while at Ladenburg, Moss was seeking a position on the board of directors of a company known as Graphic Sciences which was trading on the over-the-counter market. To this end, they charge that Moss purchased 1,000 shares of Graphic Sciences for each of the Fein accounts without permission and they were subsequently sold at a loss. (Complaint ¶ 29).

This allegation is clearly defective since it is pleaded "upon information and belief." The law in this Circuit provides that such allegations are insufficient under Rule 9(b). *Segal v. Gordon,* 467 F.2d, *supra* at 608. While the rule has been relaxed where matters are peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded. *Id.*

The complaint before me is totally void of any facts upon which the allegations in paragraph 29 are founded. The plaintiffs simply state in a conclusory fashion that the purchase was fraudulent. Thus, even under the relaxed standard, assuming it applies, plaintiffs have failed to allege facts sufficient to sustain the allegation.

The sole allegation directed toward Peter Stabell and Gordon Joblan [9] is that in June 1975, they serviced the Fein accounts and "continued the practices and courses of business involving unauthorized trades" including 2,000 shares of Recognition Equipment and 500 shares of United Artists Theaters and the refusal to sell shares of the Armin Corp.

■ The failure of plaintiffs to provide the basis of the charge that these actions, if true, were unauthorized is fatal under Rule 9(b). Plaintiffs must at least state in what respect these transactions were unauthorized. *See Rich v. Touche Ross & Co., supra,* 68 F.R.D. at 246. Similarly, merely alleging that an agent failed to sell pursuant to the instructions of his principal is not, without more, actionable under section 10(b). Indeed, before such liability will attach, plaintiffs must state how such actions constitute fraud under 10(b). Suffice it to say that as presently stated, plaintiffs have alleged nothing more than the possible breach of an agency agreement.

## SHEARSON and LADENBURG

■ The sole basis for plaintiffs' action against the two brokerage houses is the doctrine of *respondeat superior.* The complaint is void of any activities of either corporation which would indicate that any personnel, other than the individual defendants, were engaged in any fraudulent activity with respect to the Fein accounts. Accordingly, since plaintiffs have failed to sufficiently allege fraud against any of the individual employees of Shearson or Ladenburg, the claims against these defendants must also fail.

■ More importantly, however, Judge Brieant expressly directed plaintiffs to state their claims against Shearson and Ladenburg separately. Plaintiffs, however, in blatant disregard of this prior order have once again lumped all the claims against Shearson and Ladenburg into one stream of consciousness. Therefore, even assuming there were some substantive basis for holding Shearson and Ladenburg in this action, plaintiffs' failure to comply with Judge Brieant's prior direction is fatal to any claim against these defendants.

Accordingly, plaintiffs' claims under section 10(b) and Rule 10b–5 alleging fraud are dismissed for failure to plead with sufficient particularity under Rule 9(b).

Plaintiffs in the instant action clearly are not entitled to, as a matter of right, a third opportunity to amend their complaint. In any event, such relief is inappropriate in the case at bar. Judge Brieant's instructions in dismissing the original complaint provided plaintiffs with the plainest notice of what was required in the amended complaint to state a valid claim under 9(b). It is apparent from the complaint before me that plaintiffs have all but ignored these directions. Under such circumstances, they do not deserve yet another chance. *Denny v. Barber,* 576 F.2d 465, 471 (2d Cir. 1978).

In light of the above holding, I dismiss both of plaintiffs' pendent claims contained in Counts II and III of the amended complaint. I need not consider whether the allegations charging violations of NYSE Rule 405 and Article III § 27 of the NASD, state a private federal claim under § 27 of the Securities Exchange Act (15 U.S.C. § 78aa).[10] Even assuming, *arguendo,* such a federal action existed, since such a claim in the case at bar would necessarily be founded upon fraud, it too would be subject to the requirements of Rule 9(b) and, as with the other claims, would be defectively pleaded based upon the complaint before me.

Finally, in light of the above decision, I need not consider the balance of defendants' motions.

9. The allegation that Gordon Joblan took over the Fein accounts is particularly curious in light of the fact that he was not a registered representative for Shearson. Rather, Joblan was Shearson's General Manager in the Retail Department.

10. It is yet unsettled in this Circuit whether a private federal cause of action is to be implied from these provisions. *See, e. g., Rolf v. Blyth Eastman Dillon & Co.,* 570 F.2d 38, 43 n.6 (2d Cir. 1978).

Accordingly, defendants' motion to dismiss plaintiffs' complaint for failure to plead fraud with the requisite particularity is granted.

SO ORDERED.