**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**GSC ENTERPRISES, INC., Clyde W. Engle, Roger L. Weston, Sierra Capital Group, Defendants.**

No. 78 C 915.

United States District Court, N. D. Illinois, E. D.

April 18, 1979.

---

**908**

Irving M. Einhorn, U. S. Securities & Exchange Commission, Chicago, Ill., for plaintiff.

Lowell E. Sachnoff, Sachnoff, Schrager, Jones, Weaver & Rubenstein, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court upon defendants' Motion to Dismiss and for Partial Summary Judgment. For the reasons set forth below, the Motion is granted in part, denied in part, and continued in part.

This case involves the merger of Lincolnwood Bancorporation, Inc. (Libco), into defendant GSC Enterprises, Inc. (GSC), which was contracted for on or about October 19, 1977, and became effective on October 24, 1977. Before the merger occurred, GSC was required to file reports with the Securities and Exchange Commission (SEC or Commission) pursuant to section 12(b) of the Securities Exchange Act of 1934 (Exchange Act), as amended, 15 U.S.C. § 78*l* (b). At that time, the common stock of GSC was listed for trading on the American Stock Exchange (AMEX). There were approximately 6400 public shareholders as of the date of the merger.

Defendant Clyde W. Engle (Engle) is the president and chairman of the Board of GSC, and a limited partner of defendant Sierra Capital Group (Sierra). Defendant

Roger L. Weston (Weston), also a limited partner in Sierra, is a director of GSC. Engle, Weston, and Sierra were all stockholders of GSC until the creation, at Engle's behest, of Libco. Along with various other individuals, they transferred their stock in GSC to Libco in mid-September, 1977, thereby giving it the majority ownership of GSC.

The Complaint implies that the merger was designed to allow defendants and the unnamed members of the group that formed Libco to convert GSC into a privately held corporation. In any event, shortly after the consummation of the merger, which had been authorized pursuant to sections 228(c) and 262(b) of the Delaware Corporation Law, GSC was delisted from AMEX, deregistered from filing reports with the SEC, and entirely owned by the thirteen shareholders of Libco.

The first public notice of this merger was made on October 26, 1977. This notice took the form of a document entitled "Notice of Merger of Lincolnwood Bancorporation, Inc., with GSC Enterprises, Inc." (Notice). The Notice was mailed to all of the minority shareholders (soon to be ex-shareholders) of GSC.

On March 10, 1978, the Commission filed its Complaint in the instant action. The SEC charges defendants with a host of violations of the federal securities acts in connection with this merger, and requests that defendants be restrained from committing similar acts in the future.

In Count I, the SEC accuses defendants of violating section 17(a) of the Securities Act of 1933 (Securities Act), as amended, 15 U.S.C. § 77q(a), in connection with the issuance of the Notice. In Count II, the Commission alleges that, in connection with the merger, defendants violated section 10(b) of the Exchange Act, as amended, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder.

While defendants raise a number of objections to these two counts, this court will only consider their arguments concerning the formal sufficiency of the pleadings at this time. In this regard, defendants challenge these counts on the same two grounds. First, they contend that the counts are deficient in that scienter is not adequately plead. Second, they maintain that the allegations contained in the two counts are not set forth with the specificity required by Fed.R.Civ.P. 9(b). In each instance, the court rejects the former position, but concurs with the latter view.

■ Defendants attack Counts I and II on the ground that they do not sufficiently allege scienter. The SEC responds by arguing that scienter is not a requisite element in an action brought by it to enjoin violations of sections 10(b) or 17(a). Alternatively, the Commission claims that scienter has been properly pleaded.

In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court held that no private cause of action for damages will lie under section 10(b) or Rule 10b–5 in the absence of an allegation of scienter. Although the language of section 10(b) that the Court deemed critical to its interpretation of that statute is absent from section 17(a), the Court of Appeals for the Seventh Circuit has held that *Hochfelder* dictates the conclusion that "even if [a private cause of action] does exist under § 17(a), it would require proof of scienter." *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 795 (7th Cir. 1977). See *Daniel v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 561 F.2d 1223, 1246 n.47 (7th Cir. 1977), *rev'd on other grounds*, —— U.S. ——, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979).[1]

As the Commission correctly points out, prior to *Hochfelder*, the law in this Circuit was that proof of scienter is not essential in

---

1. In *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033 (7th Cir.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1979), the Court of Appeals, construing section 10(b) and Rule 10b–5 defined the requisite scienter as including both the "intent to deceive, manipulate, or defraud", *Ernst & Ernst v. Hochfelder*, 425 U.S. at 194 n.12, 96 S.Ct. 1381 n.12, 47 L.Ed.2d 668, and recklessness. *See Sanders v. John Nuveen & Co.*, 554 F.2d at 792.

a SEC injunctive action. *SEC v. Dolnick,* 501 F.2d 1279 (7th Cir. 1974); *Swanson v. American Consumer Industries,* 475 F.2d 516, 523 (7th Cir. 1973) (Sprecher, J., concurring); *SEC v. VanHorn,* 371 F.2d 181 (7th Cir. 1966). However, as the Commission fails to mention, it was also the apparent view of this Circuit that "[i]t would be anomalous to hold the plaintiff in a private enforcement case to a higher standard of proof [than the SEC is subject to in an injunctive action]." *Swanson v. American Consumer Industries,* 475 F.2d at 525 (Sprecher, J., concurring). *See SEC v. Dolnick,* 501 F.2d at 1284. Thus the parties put before the court the question of whether *VanHorn* and its progeny are no longer good law, or whether the quoted language in *Swanson* must be abandoned. However, owing to its construction of the Complaint, the court need not take a position at this time on the much mooted issue of whether different burdens of proof are to be imposed in damage suits brought by private plaintiffs under sections 10(b) and 17(a) and SEC injunctive actions. *Compare SEC v. Aaron,* 47 U.S.L.W. 2605, (2d Cir. March 12, 1979) *and SEC v. World Radio Mission,* 544 F.2d 535 (1st Cir. 1976) *with SEC v. Blatt,* 583 F.2d 1325 (5th Cir. 1978); *SEC v. Willis,* 47 U.S.L.W. 2423 (D.D.C. December 14, 1978); *SEC v. Cenco,* 436 F.Supp. 193, 200 (N.D.Ill.1977) (Crowley, J.); *SEC v. American Realty Trust,* 429 F.Supp. 1148 (E.D.Va.1977), *rev'd on other grounds,* 586 F.2d 1001 (4th Cir. 1978).

Whether or not scienter must be pleaded by the Commission in actions to enjoin violations of section 17(a), the court concludes that the SEC has adequately pleaded it in Count I of the instant Complaint. Rule 9(b), F.R.Civ.P., provides that, in a securities case, "the circumstances constituting fraud or mistake shall be stated with particularity." *See, e. g., Tomera v. Galt,* 511 F.2d 504 (7th Cir. 1975). But that Rule also provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *See* 2A Moore's Federal Practice ¶ 9.03, at 1936–1937 (2d ed. 1975). Rule 8(a), F.R.Civ.P., on the other hand, says that a Complaint "shall

contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

The question raised by defendants is whether the pleading requirements set forth in those provisions of the Federal Rules of Procedure are satisfied when scienter is plead by tracking the language of section 17(a). While there is no case law directly on point, there are two instances in which courts have passed on the identical issue in the context of claimed violations of section 10(b) and Rule 10b–5. In *SEC v. Joseph Schlitz Brewing Co.,* 452 F.Supp. 824, 831 (N.D.Ill.1978), the court held that "pleading scienter in the language of section 10(b) and Rule 10b–5 is sufficient to overcome a motion to dismiss." In *Wolford v. Equity Resources Corp.,* 424 F.Supp. 670 (S.D.Ohio 1976), the opposite conclusion was reached. In neither case did the court articulate the basis for its decision.

Nevertheless, this court believes that the result reached in *Schlitz* was correct. This view is consistent with the relevant *dictum* of the Second Circuit Court of Appeals in *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 540 F.2d 27, 37 (2d Cir. 1976). Further, it follows from the holding of the Seventh Circuit Court of Appeals in *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 558 F.2d 831 (7th Cir. 1977), that the doctrine of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), is applicable in this context. Finally, the court feels that this outcome is entirely reasonable. Complaints are supposed to inform defendants of the allegations that plaintiffs wish to make concerning them. If the words of a statute have been construed as having a particular meaning, those words, incorporated in a Complaint, ought to be deemed to fairly serve this function. Although several mental states satisfy the scienter requirement of section 17(a), and would therefore be encompassed by the language of the statute, pleading in the alternative is permissible under the Federal Rules of Civil Procedure. Rule 8(e)(2). *See, e. g., Colonial Bank & Trust Co. v. American Bankshares,* 439 F.Supp.

797 (E.D.Wis.1977). Hence, the court does not consider scienter to be insufficiently plead in Count I of the Complaint.

The court also finds that the Commission has adequateiy alleged scienter in Count II of the instant Complaint. In paragraph 30, the SEC charges defendants with "knowingly" employing schemes to defraud, making untrue statements of material fact and improper omissions, and engaging in practices that will operate as a fraud upon security holders. Defendants seem to acknowledge the sufficiency of this averment by their failure to press this argument in their Reply Memorandum.

■ Turning to defendants' other objection to the formal adequacy of Counts I and II, the court concludes that the SEC has not complied therein with Fed.R.Civ.P. 9(b). Accordingly, those counts must be dismissed.

Rule 9(b) applies to actions brought under sections 10(b) and 17(a), as both parties concede. *See, e. g., Lincoln National Bank v. Lampe,* 414 F.Supp. 1270, 1278 (N.D.Ill. 1976) & cases cited therein. The Rule's reference to "circumstances constituting fraud or mistake" signifies that complaints governed thereby must specify "matters such as the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation. . . ." 5 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1297, at 403 (1969). *See Lincoln National Bank v. Lampe,* 414 F.Supp. at 1279; 2A Moore's Federal Practice, ¶ 9.03, at 1924–1928 (2d ed. 1975).

Many of the cases assessing the sufficiency of complaints alleging violations of the anti-fraud provisions of the Federal Securities Acts are of little precedential value, as the opinions do not set forth the "circumstances" pleaded. Among the other decisions, this court discerns the existence of what are either substantial differences of opinion between judges as to what consti-

tutes sufficient pleading, or simply inconsistent rulings on motions to dismiss.

This court shares the views expressed in *Rich v. Touche Ross & Co.,* 68 F.R.D. 243 (S.D.N.Y.1975) concerning the purposes of the requirement that allegations of fraud be pleaded with particularity. *See Lincoln National Bank v. Lampe,* 414 F.Supp. at 1279.[2] Therefore, upon examination of the averments contained in Counts I and II, this court must conclude that plaintiff has not satisfied its obligations under Rule 9(b). In the words of the *Rich* court,

> [t]here must be further identification of what statements were made and in what respects they were false, misleading or inaccurate or what omissions were made and why the statements made are believed to be misleading. . . .

68 F.R.D. at 246 (citations omitted). In addition, the Commission failed to identify the manner in which defendants "indirectly" violated the statutes and rules. Therefore, Counts I and II of the Complaint must be dismissed, without prejudice, for failure to plead in conformity with Rule 9(b).

■ In Count III, the SEC charges GSC with violating section 13(a) of the Securities Act, as amended, 15 U.S.C. § 78m(a), and Rules 12b–20 and 13a–11, 17 C.F.R. §§ 240.-12b–20, 240.13a–11, thereunder. Specifically, the Commission accuses GSC of making materially false and misleading statements in a Form 8–K report on GSC dated May, 1977, in that said document

> fails to provide information concerning the amount of a previous loan . . . [and] to disclose that there was no quoted market for the Libco Corporation securities that had been pledged.

Defendants have moved for the entry of summary judgment in their favor on this count.

Insofar as the first portion of the SEC's claim, the "no information" charge, is concerned, the court construes the Commis-

---

2. In all probability, the adverse effects on an individual's standing in the community caused by allegations of fraud are, if anything, greater when the charges are made by a governmental agency than when they are brought by a private individual or concern, as was the case in both *Rich* and *Lincoln National Bank.*

sion's Memorandum in Opposition to the instant Motion as a request for leave to amend the Complaint. Rule 8(f), F.R.Civ.P. The court is of the opinion that plaintiff may amend the Complaint as a matter of right. Fed.R.Civ.P. 15(a); 6 Moore's Federal Practice ¶ 56.10, at 56–169 (2d ed. 1976). In the event that leave of the court is necessary, the request is granted. Since there is a "genuine issue" of "material fact" —i. e., whether the 8–K report is misleading—in the respect alleged by the SEC, summary judgment must be denied as to this aspect of Count III.[3] *Cf.* 6 Moore's Federal Practice ¶ 56.10, at 56–174 (2d ed. 1976).

With regard to the second portion of the SEC's charge under section 13(a), the "no quoted market" charge, the court is similarly unable to conclude that, under the standards recently reiterated by the Court of Appeals in *DeWitt v. United States,* 593 F.2d 276 (7th Cir. 1979), there is "no genuine issue" as to the "material fact" of whether the statement contained in the 8–K report is misleading.[4] Therefore, the Motion for Summary Judgment as to this part of Count III must also be denied.

In Count IV of the Complaint, the SEC charges defendants with violations of section 14(c) of the Exchange Act, as amended, 15 U.S.C. § 78n(c), and Rules 14c–2 and 14c–5, 17 C.F.R. §§ 240.14c–2, 240.14c–5, promulgated thereunder. Defendants respond to these accusations by denying the applicability of the two Rules to the facts alleged in the Complaint. Alternatively, they insist that, if the pleaded facts do implicate those Rules, the SEC lacked the statutory authority to promulgate them.

The Commission has not replied to the latter contention at all, and has submitted only a *pro forma* rebuttal of defendants'

position on the initial, threshold, question. This court is extremely reluctant to pass on the claims made by defendants without the benefit of full argument by the SEC. Therefore, the Motion to Dismiss Count IV will remain under advisement. The court directs plaintiff to submit, within 30 days, a further brief on the issues raised by defendants' Motion to Dismiss Count IV. Defendants are granted 14 days to file a brief in reply, should they so desire.

Finally, in Count V of the Complaint, the SEC charges Engle, Weston, and Sierra with violating section 13(d) of the Exchange Act, as amended, 15 U.S.C. § 78m(d), and Rules 13d–1 and 13d–2, 17 C.F.R. §§ 240.13d–1, 240.13d–2 thereunder. The theory of this Count seems to be that, by not reporting their intention to cause GSC to become privately held or to merge with Libco, these defendants either filed an improper Schedule 13D, 17 C.F.R. § 240.13d–101, on June 12, 1975, or failed to timely submit a necessary amendment to a proper Schedule 13D. Defendants move to dismiss this count on the ground that either section 13(d) did not call for them to make any disclosures on the subject, or (apparently) that the Notice constituted timely disclosure.[5] At this juncture, the court is in no position to adopt either of defendants' positions, and so the Motion must be denied.

Initially, defendants suggest that, under *Bath Industries v. Blot,* 427 F.2d 97 (7th Cir. 1970), section 13(d) is inapplicable to their decision to cause GSC to go private. However, that decision is itself inapposite here. *Bath* held that section 13(d) is implicated by the formation of a group that is, that a "group" exists, within the meaning of section 13(d)(3)—

> when, but only when, any group of stockholders owing more than 10% of the out-

---

**3.** Plaintiff is given 30 days to file a conforming amendment to Count III.

**4.** Inasmuch as there seems to be a question as to whether the phrase "quoted market" is broad enough to encompass the claim that the SEC wishes to make, the Commission may well decide to file a clarifying amendment to this portion of this claim under Count III. In the event that leave of the court is required to

allow the filing of such an amendment, such leave is hereby granted.

**5.** Defendants' objections to the specificity of the pleading of Count V are baseless. The Commission did not have to more narrowly identify the time at which defendants' intention allegedly arose. Rule 8(a), F.R.Civ.P.

standing shares of the corporation agree to act in concert *to acquire additional shares.*

427 F.2d at 109 (emphasis in original). But the court went on to rule that

> once the group agrees to act in concert *to acquire shares,* its members must comply with the [Williams] Act's disclosure requirements. . . .

*Id.* at 110 (emphasis in original).

Paragraph 43 of the Complaint contains an averment that Engle, Weston, and Sierra filed a Schedule 13D with the Commission on June 12, 1975 "concerning . . . [their] original purchase of shares of defendant GSC." The court regards this as sufficiently pleading the existence of a group at that time. As the court must assume, for the purpose of deciding the instant Motion, that this allegation is true— an assumption that defendants do not challenge—, *Bath* actually requires these defendants to "comply with the [Williams] Act's disclosure requirements," which include filing truthful Schedule 13Ds, *SEC v. Joseph Schlitz Brewing Co.,* 452 F.Supp. 824 (E.D.Wis.1978), and amending them when "any material change occurs in the facts set forth", Rule 13d–2, in a previously filed Schedule 13D.

Rule 13d–101, 17 C.F.R. § 240.13d–101, through Rule 13d–1, 17 C.F.R. § 240.13d–1, provided at all relevant times, that a Schedule 13D shall

> [s]tate the purpose or purposes of the purchase or proposed purchase of securities of the issues. If the purpose or one of the purposes of the purchase or proposed purchase is to acquire control of the business of the issues, [the Schedule 13D shall] describe any plans or proposals which the purchasers may have to . . make any other major change in . . [the issuer's] corporate structure.

Rule 12b–20, 17 C.F.R. § 240.12b–20, which applies to reports filed pursuant to section 13, Rule 12b–1, 17 C.F.R. § 240.12b–1 adds that

> [i]n addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading.

■ Despite the existence of these two provisions, defendants seem to suggest that a decision to acquire corporate control in order to convert a public corporation into a privately held one need never be reported in a Schedule 13D. The court finds this interpretation of the Rules to be unsupported, and, in the absence of controlling decisions to the contrary, the court rejects it.[6]

In the alternative, defendants argue that the mere intention to cause GSC to go private, as opposed to a decision to do so, need not be reported. Building upon this distinction, they insist that no such decision could have been made until the Federal Deposit Insurance Corporation (FDIC) approved of the proposed merger, that they had ten days from that time to file any necessary amendments to their Schedule 13D, and that the Notice constituted a timely filing.

Defendants misperceive the legal questions raised by their Motion to Dismiss. The questions before the court are whether their initial filing was misleading, and whether their failure to file an amendment thereto rendered the "current" Schedule 13D misleading. The issue in the cases cited and relied on by defendant was also whether Schedules were misleading. *See Susquehanna Corp. v. Pan American Sulphur Co.,* 423 F.2d 1075 (5th Cir. 1970).

The aforementioned issue is a question of fact that cannot be resolved on this motion to dismiss. While defendants allude to facts *dehors* the Complaint, cognizable evidence, Fed.R.Civ.P. 56(c), has not been presented which would enable the court to

---

6. Moreover, Rule 13d-101 expressly directs that a purpose or plan to cause the issues to merge with another company must be reported.

rule on the adequacy of the actual filings in the context of a motion for summary judgment, Fed.R.Civ.P. 12(b),[7] if, indeed such a factual question can ever be so decided.[8]

Furthermore, defendants have cited, and this court has found, no cases holding that the ten day grace period provided for in Rule 13d–1 applies to the filing of amendments under Rule 13d–2. *See Scott v. Multi-Amp Corp.,* 386 F.Supp. 44, 61 (D.N.J. 1974). Rather, the Rule requires "prompt" filing. As *Scott* makes clear, this is also a question of fact. Under the current state of the record, summary judgment could not be entered in defendants' favor on the issue of whether a timely filing was made.[9]

Accordingly, Counts I and II are dismissed, without prejudice; the Motion for Summary Judgment on Count III is denied; the Motion to Dismiss Count IV is continued; and the Motion to Dismiss Count V is denied. Plaintiff is directed to submit a conforming amendment to Count III and a brief on the issues raised by the Motion to Dismiss Count IV within 30 days. Defendants may file a brief in reply within 14 days thereafter.

It is so ordered.

---

7. The court further notes that no cognizable evidence has been introduced that indicates that the prior approval of the FDIC was in fact a prerequisite to the realization of these three defendants' plans to cause GSC to go private. In addition, no cognizable evidence has been introduced negating the possibility that such plans existed.

8. The decisions relied on by defendants involved not pretrial motions like the one *sub judice,* but rulings in which the party in the SEC's shoes had the burden of proving omissions wrongful.

9. The parties have not briefed, and the court does not now decide, the question of whether the Notice constituted a sufficient and properly submitted amendment to the Schedule 13D that defendants did file.